# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

CAROL DAVISON, )   3:05-CV-0021-BES (RAM)
        Plaintiff, )
        vs. )   **ORDER**
ELDORADO RESORTS LLC, et al., )
        Defendants. )

      Before the court is Defendant Eldorado Resorts LLC (hereinafter "Eldorado") Supplemental Motion for Evidentiary Ruling (Doc. #35), and the Supplement thereto (Doc. #41). Plaintiff filed an opposition (Doc. #45), and Defendant Eldorado replied (Doc. #52). Defendant Coresource, Inc. (hereinafter "Coresource") filed a motion to join Eldorado's motion. (Doc. #54.)

## STATEMENT OF FACTS

      Plaintiff Carol Davison filed an ERISA complaint on January 12, 2005 against Defendants Eldorado and Coresource pursuant to 29 U.S.C. § 1001, et seq. (Doc. #2.) Plaintiff was employed at the Eldorado and received group medical insurance that was an ERISA plan. (*Id.*) The plan was administered by Coresource, a third-party administrator. (*Id.*) The case arises out of Plaintiff's alleged "emergency" medical stay at Washoe Medical Center in September 2002 as a result of premature labor. (*Id.*) Plaintiff incurred many costs through a series of hospital visits, and she alleges that Defendants failed to provide her with the medical coverage in her group plan. (*Id.*)

      The series of motions presently before the court concerns the admissibility of nine letters authored by Plaintiff. These letters were allegedly written by Plaintiff at different times between November 2002 and February 2003, and according to Plaintiff, evidence her attempts to administratively appeal the denial medical benefits. (Doc. #35, Exh. 4.) Defendants deny ever

receiving any of the letters. (Doc. #35, Exhs. 1, 2.) As far as Defendants are concerned, Plaintiff has not exhausted her administrative remedies. (Doc. #35.)

Plaintiff produced the letters at issue during discovery as a result of her deposition testimony. They are all unsigned versions that were printed out after the fact from a CD[1] created by Plaintiff. (*Id.*) Because Defendants never received Plaintiff's letters, and because Plaintiff could not produce signed copies of the letters she allegedly sent,[2] Defendants came to question the authenticity of the letters she purportedly saved to CD. The CD from which these letters were printed was examined by both parties and their experts.

A. Plaintiff's Deposition Testimony

Plaintiff testified that she typed the purported appeal letters on her home computer. (Doc. #35, Exh. 5 at pp. 82, 133.) Specifically, Plaintiff would type the letter, save it, print it out, then sign and mail them from home. (*Id.* at 86-87, 139.) When asked whether she ever saved the documents to her hard drive, she replied that she saved them all to a CD (*id.* at 82, 134), every time she wrote a letter and on the same day she would write a letter (*id.* at 200). Plaintiff explained that she normally backed things up on a CD because her computer had crashed three times. (*Id.* at 82-83.)

B. Defendants' Expert: Paul Mudgett of the Singleton Group

Mr. "Paul Mudgett is a security and technology professional with over 12 years of experience in information security, computer forensics, technology integration and project management." (Doc. #35, Exh. 7.) His analysis of Plaintiff's CD was based on the "representation" that "[t]he files in

---

[1] Plaintiff answered in the affirmative when she was asked whether she saved her letters to a floppy disk (Doc. #35, Exh. 5 at p. 83), but it was later clarified that she meant a CD (*id.* at 134). The CD at issue is a CD-R, as opposed to a CD-RW. (Doc. #35, Exh. 12; *see* Doc. #35, Exh. 13 at p. 7.) The key difference between the two is that files placed onto a CD-R cannot be modified or overwritten. (Doc. #35, Exh. 9 at pp. 55, 63, 105; Doc. #35, Exh. 13 at pp. 17-18.) Files that are placed onto a CD-RW may be overwritten. (Doc. #35, Exh. 9 at p. 55.)

[2] Signed versions could not be produced because Plaintiff never made xerox copies of the letters before she sent them. (Doc. #35, Exh. 5 at p. 139.)

question were . . . directly saved on a CD rather than saved to a computer hard drive and subsequently copied to CD."[3] (*Id.*; Doc. #35, Exh. 13 at pp. 6, 16-17, 21, 29.)

Mr. Mudgett explained that an operating system such as Windows logs three time stamps when a file is saved. (Doc. #35, Exh. 7.) The first stamp is titled "created" and keeps track of the date and time the file was first saved. (*Id.*) The second stamp, "modified," shows the last time the file was opened and changed. (*Id.*) Finally, the last stamp, "accessed," displays the date and time the file was most recently opened regardless of whether any changes were made to the file. (*Id.*) Thus, when a file is saved to a CD, the "created" date will be the same as the "modified" date, and cannot change on a finalized CD. (*Id.*)

According to Plaintiff's testimony then, that she would save directly to CD the same day she wrote each letter, the "created" dates on the CD should reflect the dates written on each of the letters. However, after examining the word files on the CD, Mr. Mudgett discovered the following:

| Bates Label No. | Hard copy date | "Created" time stamp as shown on CD files |
|---|---|---|
| P78 | December 10, 2002 | September 13, 2004 at 8:13:58 pm |
| P85 | December 1, 2002 | September 15, 2004 at 1:06:21 pm |
| P87 | November 15, 2002 | September 15, 2004 at 1:08:53 pm |
| P65 | February 2, 2003 | September 15, 2004 at 1:10:48 pm |
| P67 | February 2, 2003 | September 15, 2004 at 1:11:43 pm |
| P61 | February 15, 2003 | September 15, 2004 at 1:14:47 pm |
| P69 | January 15, 2003 | September 15, 2004 at 1:15:24 pm |
| P74 | December 10, 2002 | September 15, 2004 at 1:18:53 pm |
| P80 | December 2, 2002 | September 15, 2004 at 1:20:32 pm |

(Doc. #35, Exh. 7; Doc. #35, Exh. 13 at pp. 9, 16.)

C.  Plaintiff's Expert: Ira Victor of Privacy Technician, Inc.

---

[3] A person cannot save documents directly to a CD through Microsoft Word alone. (Doc. #35, Exh. 13 at p. 22.) One would need another program to accomplish that but it is not clear whether Plaintiff had any such programs installed on her computer. (*Id.* at 51-53; Doc. #35, Exh. 9 at p. 195.)

3

1      Mr. Ira Victor is a certified information security specialist. (Doc. #35, Exh. 11.) One of his
2 certifications, a G17799 ISO, covers data integrity, forensics, chain of custody, incident handling,
3 malware, and other areas of information security. (*Id.*) His analysis of Plaintiff's CD began with some
4 information that he obtained directly from Plaintiff during a personal interview,[4] Plaintiff's deposition
5 testimony, and Defendants' expert report. (*Id.*)

6      Mr. Victor's opinion was that the true creation dates of the CD files could not be determined
7 without further information. (Doc. #35, Exh. 11.) This was because, for example, the potential
8 movement of data back and forth between CD and hard drive, inaccurate computer time settings, or
9 malware infections could have changed the "created" or "modified" dates on the CD at issue. (*Id.*; Doc.
10 #35, Exh. 9 at pp. 62-68.) Indeed, Mr. Victor was informed by Plaintiff and her computer rental center
11 that Plaintiff's computer had been reformatted or "wiped out" on several occasions due to malicious
12 code infections.[5] (Doc. #35, Exhs. 8, 11.) Plaintiff also told Mr. Victor that she backed-up her letters
13 onto a CD after she saved them onto the hard drive, and that she did not save her word documents
14 directly to CD. (Doc. #35, Exh. 11.) In fact, according to Mr. Victor, Plaintiff would not have been
15 able to save directly to CD without saving to her hard drive first unless she had a particular kind of
16 software, which she did not. (*Id.*; *accord* Doc. #35, Exh. 13 at p. 22.)

17      Plaintiff also informed Mr. Victor that after her computer would get reformatted, she would
18 reload all the information onto the hard drive that she had previously backed-up on CD. (Doc. #35,
19 Exh. 9 at pp. 81-82.) Mr. Victor explained, however, that the process of transferring materials back
20 to the hard drive from a CD would change the "created" date of the document saved onto the hard
21 drive to the date of transfer—it would not share the same "created" date belonging to the document
22 saved to the CD. (*Id.* at 63-64; Doc. #35, Exh. 11 (Fig. 1.1); *see* Doc. #35, Exh. 13 at p. 27-28.) In

---

[4] All questions asked by Mr. Victor were formulated and directed by Mr. Victor to Plaintiff. (Doc. #35, Exh. 11.)

[5] When a computer is reformatted, it is essentially reset to its original factory settings such that all information created by the user and extra programs installed by the user are deleted. (Doc. #35, Exh. 11.)

4

addition, by re-burning[6] that newly transferred document onto a second CD, the "created" date would again change to the date of burning.[7] (Doc. #35, Exh. 9 at pp. 63-64; Doc. #35, Exh. 11 (Fig. 1.2); *see* Doc. #35, Exh. 13 at p. 27-28, 37.)

## LEGAL STANDARD

The proponent of any particular item of evidence bears the burden of showing that the evidence is what the proponent claims it to be. Fed. R. Evid. 901; *United States v. Blaylock*, 20 F.3d 1458, 1462 (9th Cir. 1994); *see* Fed. R. Evid. 104(b). The proponent must make a prima facie showing "'so that a reasonable juror could find in favor of authenticity or identification.'" *United States v. Workinger*, 90 F.3d 1409, 1415 (9th cir. 1996) (citing and quoting *United States v. Chu Kong Yin*, 935 F.2d 990, 996 (9th Cir. 1991)). The determination of authenticity and admissibility is within the court's discretion. *Sec. Farms v. Int'l Bhd. of Teamsters, Chauffers, Warehousemen & Helpers*, 124 F.3d 999, 1011 (9th Cir. 1997); *United States v. Vasquez*, 858 F.2d 1387, 1392 (9th Cir. 1988). Once admitted, the trier of fact determines the credibility and probative value of the evidence. *United States v. Workinger*, 90 F.3d 1409, 1415 (9th Cir. 1996); *United States v. Black*, 767 F.2d 1334, 1342 (9th Cir. 1985).

## DISCUSSION

Defendants' Supplemental Motion for an Evidentiary Ruling seeks a preliminary determination regarding the admissibility of Plaintiff's purported appeal letters. (Doc. #35.) It is essentially a motion

---

[6] To "burn" a CD is a term used when a person places files onto a CD from some other source.

[7] For example, assume that Plaintiff authored a letter and burned it onto a CD on January 1, 2000. The "created" date of the document on the CD should say January 1, 2000. However, if the document is thereafter deleted from the hard drive and then reloaded back from the CD one month later, the "created" date of the document located on the hard drive would be February 1, 2000. The "created" date of the document saved to CD would remain January 1, 2000. If one month after that, one were to burn that document on the hard drive onto a different CD, the "created" date of the new document on the second CD would be March 1, 2000.

Mr. Mudgett's deposition testimony was essentially the same. He testified that moving a file from a CD to the hard drive "may change [the created date], but you wouldn't be able to change that create date on the CD once the CD has been created." (Doc. #35, Exh. 13 at p. 27.) However, if one were to reburn the file onto a new CD, it would be possible for the create date to have changed. (*Id.* at 28.)

5

1  *in limine* where Defendants move the court to render Plaintiff's purported appeal letters inadmissible
2  based on the fact that the CD to which all of the letters were saved contains documents that are dated
3  more than 180 days after the appeal deadline. (*Id.*)

4  A.  Plaintiff's Expert: Mr. Ira Victor

5  Before the court can reach the main issue of the letters' admissibility, it must deal with the preliminary issue of Mr. Victor's competence to testify as an expert. Courts have broad discretion in determining whether a person qualifies as an expert. *United States v. Johnson*, 575 F.2d 1347, 1360-61 (5th Cir. 1978); *Fineberg v. United States*, 393 F.2d 417, 421 (9th Cir. 1968); *see* Fed. R. Evid. 104. Under Federal Rule of Evidence 702, in order to qualify as an expert one must possess the "'knowledge, skill, experience, training, or education' relevant to such evidence or fact in issue." *United States v. Chang*, 207 F.3d 1169, 1172 (9th Cir. 2000) (citing Fed. R. Evid. 702). Defendants challenge Mr. Victor's qualification and argue that he is not competent to give an expert opinion because he lacks any real knowledge and experience in forensic investigations. (Doc. #35.)

In the court's view, however, Mr. Victor's collective experiences sufficiently demonstrate that there is a reliable basis for his technical knowledge and opinion in this matter. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999). Mr. Victor is a certified information security specialist who currently works for an information security consulting firm. (Doc. #35, Exh. 11.) He has two security certifications (Doc. #35, Exh. 9 at pp. 8-9), and has experience setting up various computer systems for businesses (*id.* at 9), managing data in secure environments (*id.* at 17), and an overall thirteen years of experience in the field of information technology and e-commerce (*id.* at 9). Although forensics may not be his direct focus, his field of work necessarily involves and overlaps with the field of forensics in that there are different stages of security incident management and compliance that require one to evaluate and investigate what may have happened to certain data. (*Id.* at 47.) In fact, "[d]ata movement, transmission, and forensics like the kind under discussion in Ms. Davison's case, are key areas of concern for specialists in the information security field" (Doc. #35, Exh. 11). *See United States v. Bourgeois*, 950 F.2d 980, 987 (5th Cir. 1992) (using expert's own testimony in determining his qualifications to give an opinion).

6

1         Mr. Victor's reluctance to call himself an expert in forensics (Doc. #35, Exh. 9 at pp. 87-88) is inconsequential to the court's determination, *see* Fed. R. Evid. 104; *Fineberg*, 393 F.2d at 421. It is clear from the course of his deposition that Mr. Victor was unaware of the legal definition of an "expert," and was instead using the layman's definition. (Doc. #35, Exh. 9 at pp. 87-88.) However, the law does not limit expert testimony to those who are considered the absolute best in the field. *See Sidebottom v. Delo*, 46 F.3d 774, 753 (8th Cir. 1995). The law only requires that Mr. Victor possess "such knowledge and experience in [the] field or calling as to make it appear that his opinion or inference will probably aid the trier in his search for the truth[,]" *Fineberg*, 393 F.2d at 421; *accord Jenkins v. United States*, 307 F.2d 637, 643 (D.C. Cir. 1962), and the court finds that he does.

        Second, Defendants object to Mr. Victor's report based on his reliance on an out of court interview with Plaintiff. (*E.g.*, Doc. #35, Exh. 9 at p. 100.) Of course, experts may rely on inadmissible evidence, including hearsay, in forming their opinions as long as they are of "a type reasonably relied upon by experts in the particular field in forming opinions." Fed. R. Evid. 703; *accord Carson Harbor Vill., Ltd. v. Unocal Corp.*, 270 F.3d 863, 873 (9th Cir. 2001). Whether the inadmissible evidence is of the type reasonably relied upon by other experts is a matter for the court to decide. Fed. R. Evid. 104(a); *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 748 (3d Cir. 1994). Here, the court finds that Defendants' objection to the use of Mr. Victor's report goes more towards its weight to be given at trial rather than its admissibility.

        Mr. Victor chose to interview Plaintiff before he made his report because her deposition testimony was too vague for him (Doc. #35, Exh. 9 at p. 70), to form an opinion on the accuracy of the "created" dates on the CD at issue (*id.* at 51). *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d at 748 (stating that judges can rely on the expert's own opinions in determining whether there was reasonable reliance); *see United States v. Sims*, 514 F.2d 147, 149 (9th Cir. 1975) (an "expert is fully capable of judging for himself what is, or is not, a reliable basis for his opinion"). The deposition testimony was not developed or specific enough to give him an "understanding [sic] the circumstances involved in the creation, access, storage, back-up and chain of custody of the files." (Doc. #35, Exh. 11.) For example, throughout Plaintiff's deposition both Plaintiff and counsel made constant references to a

7

1  "disk" not realizing that floppies, CDs, and hard drives are all disks. (Doc. #35, Exh. 9 at pp. 70-71;
2  *e.g.*, Doc. #35, Exh. 5 at pp. 139, 200.) Given the overall vagueness of her testimony and the signs
3  of confusion, the court finds it was reasonable and logical for Mr. Victor to interview Plaintiff and ask
4  her more specific questions before forming an opinion. *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d at 748.

5  The effect of Mr. Victor's opinion being based of Plaintiff's out of court statements should then
6  be for the trier of fact to determine. *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 801 (6th Cir. 2000)
7  ("'weaknesses in the factual basis of an expert witness' opinion . . . bear on the weight of the evidence
8  rather than on its admissibility'"); *Bergen v. F/V St. Patrick*, 816 F.2d 1345, 1352 n.5 (9th Cir. 1987).

> [T]he opinion 'is regarded as evidence in its own right and not as hearsay in disguise.' In a sense, the expert synthesizes the primary source material be it hearsay or not into properly admissible evidence in opinion form. The trier of fact is then capable of judging the credibility of the witness as it would that of anyone else giving expert testimony. This rule respects the functions and abilities of both the expert witness and the trier of fact . . . .

*Sims*, 514 F.2d at 149. Here, Mr. Victor's opinion necessarily concludes that the CD at issue is not the original if in fact Plaintiff did move documents back and forth between CDs and her hard drive (*see* Doc. #35, Exh. 11 (Figs. 1.1-1.3)). *See Paddack v. Dave Christensen, Inc.*, 745 F.2d 1254, 1261-62 (9th Cir. 1984) (stating that the hearsay evidence should only be considered to the extent it serves as the foundation for the expert opinion, and not as substantive evidence); *Sims*, 514 F.2d at 149-50 (same). Mr. Mudgett's report, on the other hand, assumes that the CD is the original back-up. (*See* Doc. #35, Exh. 7.) Thus, whether Mr. Victor's or Mr. Mudgett's opinion is controlling will ultimately rest on Plaintiff's credibility.

The court will not turn what is essentially a credibility determination on a key issue of fact into question of admissibility. Accordingly, the court finds Mr. Victor is competent to testify as an expert in this matter, and that his testimony is not inadmissible for its reliance on hearsay.

B.  Authenticity of the Compact Disk

The substance of Defendants' Motion is that Plaintiff cannot present sufficient evidence to sustain a preliminary determination of admissibility for the appeal letters. Defendants argue that no reasonable juror could find Plaintiff's letters are authentic because it is undisputed that the "created"

8

dates tagged onto each letter on the CD are well after the 180-day appeal time limit. (*See* Doc. #35, Exhs. 7, 11.) Letters that were purportedly written from November 2002 to February 2003 bear tags from September 2004. (Doc. #35, Exh. 7.) According to Defendants, however, the individual documents should have "created" dates that mirror the dates they were purportedly written on (*id.*), because Plaintiff testified at her deposition that she "would type [a letter] up on the computer, save it to the disk, print one out, sign it and put it in an envelope and mail it to Coresource."[8] (Doc. #35, Exh. 5 at p. 139.) She testified she would do that each time she wrote another letter. (*Id.* at 200.) The fact that the "created" dates do not match the dates on each letter therefore is contrary to Plaintiff's assertions. (*See* Doc. #35, Exh. 9 at p. 63 (testifying that "created" dates cannot be changed on files burned to CD).) Defendants contend that Plaintiff authored these documents after the fact. Thus, Defendants assert that no reasonable juror could determine the letters are authentic.

Plaintiff and her expert attempt to explain the mismatching of dates and establish a prima facie case of authenticity in several ways. Most of their explanations are insufficient, however, and cannot be relied upon by the court in determining the admissibility of the letters because they are not sufficiently grounded in the facts. *See* Fed. R. Evid. 702; *Guidroz-Brault v. Mo. Pac. R. Co.*, 254 F.3d 825, 830-31 (9th Cir. 2001) (upholding the exclusion of expert testimony based on factually unsupported assumptions). For example, Mr. Victor explains that letters which should bear a creation date of January 2003 may instead be marked as "created" in September 2004 if the computer's internal calendar and clock were incorrectly set. (Doc. #35, Exh. 9 at p. 78.) Yet there is no testimony or any other form of evidence showing that Plaintiff's computer calendar and clock malfunctioned. (*See* Doc. #35, Exh. 9 at pp. 83-87, 97-99, 118-120, 134-35, 142-43; Doc. #35, Exh. 13 at pp. 32, 34.) There are also no facts upon which Mr. Victor could conclude that Plaintiff's computer was incorrectly set to the same day in September 2004 for almost four months. (*See* Doc. #35, Exh. 9 at pp. 83-87, 97-99, 118-120, 134-35, 142-43.) The court cannot make a finding of admissibility based solely on conjecture and speculation. *See* Fed. R. Evid. 702; *see, e.g.*, *Guidroz-Brault*, 254 F.3d at 830-31.

---

[8] By "disk," Defendants assume that Plaintiff was referring to a CD, and not the hard drive. (Doc. #35.)

9

Mr. Victor also tried to explain that computer malware may have somehow changed the creation dates of the documents before they were saved to CD. (Doc. #35, Exh. 11; *but see* Doc. #35, Exh. 13 at p. 34.) Yet again, no diagnostic reports have been presented to the court despite the fact that Plaintiff had her computer reformatted several times over. There is no showing of what kind of viruses, worms, or spyware Plaintiff's computer may have had, and there is nothing to show that Mr. Victor had any real information beyond Plaintiff's own vague descriptions to substantiate his opinions.[9] (Doc. #35, Exh. 9 at pp. 99, 153, 155, 180-81; Doc. #35, Exh. 13 at pp. 55, 60.) Again, this possible explanation does not provide sufficient information for the court to conclude the letters are authentic and admissible. *See* Fed. R. Evid. 702; *see, e.g.*, *Guidroz-Brault*, 254 F.3d at 830-31.

Third, Mr, Victor explained that because a number of people in Plaintiff's household had administrative access to her computer anybody could have manually reset the computer's clock setting, moved files off and back onto the computer, or changed the "created" dates on Plaintiff's documents, and so on. (Doc. #35, Exh. 11.) This attempted form of authentication, along with the rest, have no end in sight. (*See* Doc. #35, Exh. 9 at p. 99.) Plaintiff could provide any number of possibilities to explain the hard facts when their likelihood is based on further speculation. Of course, experts may give opinions that are not based on firsthand knowledge, Fed. R. Evid. 703; *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592 (1993), but this goes too far, *e.g.*, *Guidroz-Brault*, 254 F.3d at 830-31 (upholding the exclusion of an expert's testimony that was "not sufficiently founded on the facts"). Most of Mr. Victor's report is only based on a very superficial investigation. A reasonable jury could not make a finding of authenticity from any of these explanations because there is no underlying

---

[9]For example, at one point in his deposition, Mr. Victor recalls that Plaintiff told him that boxes kept popping up on her computer. (Doc. #35, Exh. 9 at p. 180.) This bit of information allowed Mr. Victor to "conclude that the computer she rented was severely infected with spyware and computer viruses." (*Id.*) However, Mr. Victor did not attempt to determine what kind of "boxes" these were (*id.* at 180-81), or whether these boxes were in fact a sign of malware (*see id.* at 183-84). Plaintiff also told Mr. Victor that her computer would mysteriously shut down on its own, but Mr. Victor did not try to determine the cause. (*Id.* at 181, 183-84.) Instead, he admitted that the computer may have unexpectedly shut down due to automatic settings as opposed to malicious programs. (*Id.* at 183-84.)

10

evidence to support them. Fed. R. Evid. 702; *Villegas-Valenzuela v. I.N.S.*, 103 F.3d 805, 812 (9th Cir. 1996) (refusing to entertain questions of authentication based on pure speculation).

The last explanation proffered by Mr. Victor is the only possibility presented to the court that has some factual basis. It involves a complicated series of transactions, *see supra* n.7, which if they occurred, would have changed the "created" dates tagged onto the files saved on the CD, (Doc. #35, Exh. 11 (Figs. 1.1-1.3); *but see* Doc. #35, Exh. 13 at p. 57). This explanation, however, is dependent on the use of several CDs (Doc. #35, Exh. 9 at pp. 73, 160), and would necessarily mean that the CD in question is not the original CD to which Plaintiff burned her appeal letters. (*See* Doc. #35, Exh. 11 (Figs. 1.1-1.3); Doc. #35, Exh. 13 at pp. 16, 27-28.) Indeed, Plaintiff asserted that was the case in her opposition (Doc. #45), and in a supplemental response to a request for production (Doc. #52, Exh. 19). Nevertheless, Defendants maintain that Mr. Victor's explanation is untenable because the CD that was analyzed by both experts was in fact the original. (Doc. #35, Exh. 6 (fourth request).)

However, given that this part of Mr. Victor's report is factually grounded in an interview with Plaintiff (Doc. #35, Exh. 11),[10] Fed. R. Evid. 703; *see, e.g.*, *Guidroz-Brault*, 254 F.3d at 830-31, the court finds Plaintiff has met the low threshold for admissibility under Federal Rule of Evidemce 901, *see Bazak Int'l Corp. v. Tarrant Aparel Group*, 378 F. Supp. 2d 377, 391 (S.D.N.Y. 2005). A reasonable juror could find that Plaintiff's letters are authentic considering the totality of the circumstances, *United States v. Black*, 767 F.2d 1334, 1342 (9th Cir. 1985); *Alexander Dawson, Inc.*, 586 F.2d at 1302, including Mr. Victor's report, Mr. Victor's interview with Plaintiff, and the confusion in Plaintiff's deposition. That is, the court recognizes that portions of Plaintiff's deposition, when pieced together with her response to requests for production, create the appearance that the CD in question is the original and the letters

---

[10]During the interview, Plaintiff explained the way she maintained her back-up CDs to Mr. Victor. Mr. Victor reported that:

> According to Ms. Davison, [after her computer had been reformatted], it was re-set to factor settings. Again, consistent with a wiping. Ms. Davison told me that she would take the information from the CD she had used for back-up storage of the documents, and copy it back onto the hard-drive of the newly repaired computer. Then she would make a new back-up, she would create it from the hard-drive of the newly repaired computer.

(Doc. #35, Exh. 11.)

11

are back-dated as Defendants contend. However, both Plaintiff and counsel evidenced a lack of understanding or familiarity with computers, electronic file storage mediums, and technical jargon throughout her deposition testimony, and apparently, in the responses to requests for production. *United States v. Black,* 767 F.2d at 1342. The court recognizes these weaknesses on both sides, and that Defendants' argument gains much strength from their exploitation.

For example, there were references to "disks" in general throughout the deposition. (*E.g.,* Doc. #35, Exh. 5 at pp. 139, 200.) Defendants claim that every single time Plaintiff referred to saving a document to "disk," she meant that she saved directly to CD and never to her hard drive (Doc. #35). That, however, is an assumption on Defendants' part that the court is unwilling to embrace. *See, e.g., In re Exxon Valdez*, 270 F.3d 1215, 1249 (9th Cir. 2001) (refusing to overturn the trial court's admission of evidence even where "the challenge to authenticity was plausible"). The term "disk" is a general one, and it could refer to a floppy, CD, or hard drive. (Doc. #35, Exh. 9 at pp. 70-71.) In fact, the parties were alluding to a floppy disk for a significant amount of time before it was finally clarified that the electronic file storage medium was actually a CD. (Doc. #35, Exh. 5 at p. 134.) Moreover, both experts agreed that Plaintiff could not have burned documents to a CD directly through her word program without additional software (Doc. #35, Exh. 9 at p. 196; Doc. #35, Exh. 13 at p. 51), yet there is no indication that Plaintiff possessed such software (*see* Doc. #35, Exh. 9 at p. 196). There is no indication that Plaintiff, her counsel, and even counsel for the opposition were aware that she was testifying inaccurately.

In exercising its discretion, the court is also conscious of the circumstances surrounding the discovery of the CD and Defendants' Motion. *Alexander Dawson, Inc.*, 586 F.2d at 1302. This motion for evidentiary ruling only arose after the experts viewed the CD, and the experts analyzed the CD only after Plaintiff had already been deposed. No party, including Plaintiff's own attorneys (*e.g.,* Doc. #35, Exh. 5 at p. 134; Doc. #35, Exh. 6; Doc. #52, Exh. 19), seemed to know or appreciate how important it was to use specific terms and ask specific questions concerning the maintenance of Plaintiff's back-up CDs. Indeed, there were no real questions on that topic during her deposition, and Mr. Mudgett's report was based solely off of Plaintiff's deposition testimony.

Thus, considering the totality of the circumstances, *Alexander Dawson, Inc.*, 586 F.2d at 1302, the court finds that Plaintiff has made a prima facie case of authenticity. A reasonable jury could determine Plaintiff's appeal letters are authentic, Fed. R. Evid. 901(b)(1), given that portion of Mr. Victor's report that breaks down the transfer of documents between the hard drive and CDs (Doc. #35, Exh. 11), has an adequate factual basis, *see Guidroz-Brault*, 254 F.3d at 830-31, and is not irreconcilable with Plaintiff's deposition testimony, *Carbo*, 314 F.2d at 737. Defendants' arguments are more appropriate before the trier of fact, whose province it is to decide the weight of the evidence at trial. *Alexander Dawson, Inc.*, 586 F.2d at 1302.

## ORDER

**IT IS HEREBY ORDERED** that Defendants' Supplemental Motion for Evidentiary Ruling (Doc. #35) is **DENIED**.

DATED: March 10, 2006.

_____
UNITED STATES MAGISTRATE JUDGE